844

[No. 33608-1-II.  Division Two.  August 29, 2006.]

THE STATE OF WASHINGTON, *Respondent*, v. LEE ARNOLD
STEELE, *Appellant*.

*Anne M. Cruser* (of *Law Office of Anne Cruser*), for appellant.

*Arthur D. Curtis, Prosecuting Attorney*, and *Michael C. Kinnie, Deputy*, for respondent.

¶1 BRIDGEWATER, J. — Lee Arnold Steele appeals his exceptional sentence entered under a plea agreement wherein he stipulated to aggravating factors. We hold that

Steele knowingly, intelligently, and voluntarily: (1) waived his Sixth Amendment right to a jury trial and (2) stipulated to the relevant aggravating facts that enabled the court to impose an exceptional sentence. Two rationales support our holding.

¶2 First, Steele's statement of defendant on plea of guilty to sex offense (Statement) included: (1) a jury waiver; (2) a statement advising him that the court could impose a sentence outside the standard range; (3) an incorporated plea agreement, which also included a stipulation to facts supporting an exceptional sentence; and (4) an express desire to take advantage of the plea agreement. And, in detailed findings of fact and conclusions of law imposing an exceptional sentence, Steele agreed to facts supporting an exceptional sentence. Further, Steele's counsel acknowledged, both at the time of plea and at sentencing, that the court might impose an exceptional sentence. Finally, at the time of plea, the court found that Steele understood the charges and the consequences of his plea. This evidence is sufficient under *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), to uphold the judicial enhancement of Steele's sentence.

¶3 Second, following *State v. Ermels*, 156 Wn.2d 528, 131 P.3d 299 (2006), we hold that Steele's stipulation to facts supporting an exceptional sentence was indivisible from his plea agreement. Because Steele, like Ermels, did not challenge the validity of the entire plea agreement but instead sought the remedy of a sentence within his standard range, Steele cannot challenge his stipulations. We affirm the exceptional sentence.

## FACTS

¶4 In February 2005, the State originally charged Steele with: (1) two counts of second degree child rape, (2) one count of second degree child molestation, (3) one count of first degree child molestation, (4) and six counts of first degree child rape.

¶5 Steele entered into the Statement, wherein he pleaded guilty to: (1) one count of first degree child rape and (2) one count of second degree child rape. Within the Statement, Steele: (1) waived his right to a jury, (2) acknowledged that the court could impose a sentence outside the standard range, and (3) expressed his desire to take advantage of the plea agreement.

¶6 Although the State indicated that it would recommend an exceptional sentence of 280 months, a plea agreement allowed Steele to seek a special sex offender sentencing alternative (SSOSA), provided that he stipulate to aggravating factors. Thus, in the plea agreement, which was incorporated by reference in his Statement, Steele stipulated to the following aggravating factors: (1) being in a position of trust and (2) committing an ongoing pattern of sexual abuse to the same victim who was under age 18. Along with the plea agreement, the State included detailed findings of fact and conclusions of law that the sentencing court would enter if it imposed an exceptional sentence. The detailed findings of fact and conclusions of law provided as follows:

> An exceptional sentence above the standard range should be imposed based upon the following Findings of Fact and Conclusions of Law:

### I. FINDINGS OF FACT

> The court finds that both the defendant and the plaintiff agree that there is a factual basis to support an exceptional sentence above the standard range for this offense. The defendant used his position of trust, confidence, or fiduciary responsibility to facilitate the commission of the current offense, in violation of RCW 9.94A.535(2). Further, the offense was part of an ongoing pattern of sexual abuse of the same victim under the age of eighteen years manifested by multiple incidents over a prolonged period of time, in violation of RCW 9.94A.535(2).

### II. CONCLUSIONS OF LAW

> The court finds that the above agreement was mutual and it is in the interest of justice to impose an exceptional sentence.

The court orders an exceptional sentence upward. *State v. Hilyard*, 63 Wn.App. [sic] 413, 819 P.2d 809 (1991).

Clerk's Papers (CP) at 40-41.[1]

¶7 In taking Steele's Statement, the court carefully and painstakingly advised him that he was waiving certain constitutional rights:

> If you plead guilty to these charges, you are giving up certain constitutional rights. Among those is the right to a speedy and public trial before an impartial jury; the right to remain silent before and during that trial; and the right to refuse to testify against yourself.
>
> . . . .
>
> Your standard sentencing range as to Count One, which is the Rape in the First Degree, 120 to 160 months. Maximum term is life and/or $50,000.
>
> As to Count Two, Rape of a Child in the Second Degree, standard range is 102 to 136 months with a maximum term of life and/or $50,000.
>
> I need to advise you, sir, that I'm not bound by any agreement that these attorneys have made among themselves, and if you plead guilty to these charges you're giving up the right to bear firearms until such rights have been restored by a court of record.
>
> . . . .
>
> Are you making these pleas freely and voluntarily?

Report of Proceedings (RP) (Apr. 4, 2005) at 4-5.

¶8 Steele responded that he was making the pleas freely and voluntarily and that no one threatened him to make the pleas. Following a brief statement by Steele, the court found that "the pleas are knowing, intelligently and voluntarily made. The defendant does understand the charges and the consequences of the pleas. There is a factual basis for these pleas, therefore the defendant is guilty as charged." RP (Apr. 4, 2005) at 6-7. It also made written findings to that effect.

---

[1] These findings of fact and conclusions of law are consistent with those the State provided to the court at sentencing.

¶9 The court then asked why the stipulation to the exceptional sentence, as quoted above, was attached to the plea agreement. The State answered, "Actually, Your Honor, that's a condition of the plea, but that won't come into play until sentencing." RP (Apr. 4, 2005) at 7. Finally, Steele's counsel informed the court, "One additional issue is we agree that should my client not qualify or get SSOSA . . . the Court is . . . free to go above and beyond the standard range and that exceptional sentence circumstances do exist." RP (Apr. 4, 2005) at 7-8.

¶10 After a presentence SSOSA investigation, the SSOSA evaluator concluded that Steele was "a poor candidate for outpatient treatment." CP at 80. The State similarly did not recommend SSOSA; instead, the State sought an exceptional sentence of 280 months. At sentencing, the State presented the stipulation, stating, "And [Steele] has signed those findings that I will be presenting to Your Honor as well and asking that you do find grounds for an exceptional sentence." RP (June 16, 2005) at 15. And, in response to a question from the court, Steele's counsel admitted that he had reviewed the stipulation to the exceptional sentence:

It was attached to the plea statement, Your Honor, yes, and—

. . . .

—we did agree that there were grounds for an exceptional sentence in this case. I believe the case law was in flux at the time this was done, and I'm not even sure what it is right now, but we do agree that exceptional circumstances warranting—or aggravating factors exist.

RP (June 16, 2005) at 17. Ultimately, the court agreed with the State, concluding:

There is nothing in any of these reports which indicates that I should grant you SSOSA, and I will not.

Having said that, you have stipulated to an exceptional sentence in this case. . . . I feel it is the only appropriate course of conduct for me to take as a judge and in conformity with the law to accept the State's recommendation in this case. That will be the decision of this Court.

RP (June 16, 2005) at 40. The court then sentenced Steele to 280 months of confinement.

## WAIVER

¶11 While Steele acknowledges that he waived his Sixth Amendment rights to a jury trial,[2] he claims that he did not knowingly, intelligently, and voluntarily waive his *Blakely*[3] right to have a jury find the factual basis for an exceptional sentence upward. Essentially, Steele argues that the State should have sought a separate and distinct waiver of his *Blakely* rights. Therefore, he asks us to apply the *Hughes*[4] remedy and remand for imposition of a sentence within the standard range. We decline to do so.

■ ¶12 Because a plea agreement is a contract, interpreting a plea agreement is a question of law that we review de novo. *State v. Bisson*, 156 Wn.2d 507, 517, 130 P.3d 820 (2006); *State v. Harrison*, 148 Wn.2d 550, 556, 61 P.3d 1104 (2003); *Tyrrell v. Farmers Ins. Co. of Wash.*, 140 Wn.2d 129, 133, 994 P.2d 833 (2000).

■ ¶13 The Sixth Amendment to the United States Constitution guarantees the right to a jury trial. It provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed." U.S. CONST. amend. VI. This right extends to any fact that increases the penalty for a crime beyond the prescribed statutory maximum.[5] *Blakely*, 542 U.S. at 302-04. Nevertheless, the United States Supreme Court acknowledged that a jury does not need to find the facts

---

[2] "As noted above, Mr. Steele never submitted any waiver, *beyond the waiver contained in his guilty plea to the underlying charges*, of his right to a jury trial." Br. of Appellant at 3 (emphasis added).

[3] *Blakely*, 542 U.S. 296.

[4] *State v. Hughes*, 154 Wn.2d 118, 110 P.3d 192 (2005).

[5] The relevant "statutory maximum" is the maximum the court may impose based solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. *Blakely*, 542 U.S. at 303.

supporting an exceptional sentence when a defendant pleads guilty and stipulates to the relevant facts:

> But nothing prevents a defendant from waiving his *Apprendi*[6] rights. When a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding. If appropriate waivers are procured, States may continue to offer judicial factfinding as a matter of course to all defendants who plead guilty.

*Blakely*, 542 U.S. at 310 (citations omitted).

¶14 Two rationales support our holding that Steele's plea was a knowing, voluntary, and intelligent waiver of his right to have a jury determine the aggravating factors.

## A

█ ¶15 Steele's Statement is sufficient to show waiver. As we have noted, Steele: (1) waived his right to a jury, (2) acknowledged that the court could impose a sentence outside the standard range, and (3) expressed his desire to take advantage of the plea agreement. In the plea agreement, which was incorporated by reference in his Statement, Steele stipulated to the existence of the aggravating factors. Along with the plea agreement, the State included detailed findings of fact and conclusions of law that the sentencing court would enter if it did not grant SSOSA but instead imposed an exceptional sentence. And Steele's counsel acknowledged, both at the time of plea and at sentencing, that grounds for an exceptional sentence existed. Thus, Steele's plea agreement cannot be separated from his statement, and his waiver of a jury was effective as to sentencing as well. We have no doubt in concluding that Steele plainly understood that the court, and *only* the court, was going to determine his sentencing range.

---

[6] *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

B

¶16 In any case, Steele asks only that we apply the *Hughes* remedy and remand for imposition of a sentence within the standard range. But *Hughes* governs the remedy where an exceptional sentence relies on an improper *Blakely* fact finding. *Ermels*, 156 Wn.2d at 540; *Hughes*, 154 Wn.2d at 137, 140, 142. Here, the court's imposition of an exceptional sentence did not violate *Blakely* because Steele stipulated to the findings of fact and conclusions of law for an exceptional sentence. *Blakely*, 542 U.S. at 310; *Ermels*, 156 Wn.2d at 540.

¶17 Thus, Steele's limited request for the *Hughes* remedy is fatal because it does not appear that Steele can challenge the validity of the exceptional sentence without challenging the validity of the entire plea agreement. *Ermels*, 156 Wn.2d at 540-41. And Steele does not challenge the validity of the entire agreement. Absent objective indications to the contrary in the plea agreement, we "must treat a plea agreement as indivisible when pleas to multiple counts or charges were made at the same time, described in one document, and accepted in a single proceeding." *State v. Turley*, 149 Wn.2d 395, 400, 69 P.3d 338 (2003); *see also Bisson*, 156 Wn.2d 507.

¶18 Here, the plea agreement was "one bargain" or a " 'package deal.' " *Turley*, 149 Wn.2d at 400. Steele pleaded guilty to two charges and agreed that both factual and legal bases existed for an exceptional sentence; in exchange, the State dismissed eight other charges and allowed Steele to seek a SSOSA. And the stipulation was an integral part of the plea agreement. Both parties received benefits as a part of the package that they negotiated and then presented to the court. Notably, Steele does not offer objective manifestation of any intent to treat the exceptional sentence as a divisible portion of the plea agreement. *See Ermels*, 156 Wn.2d at 541.

¶19 Therefore, we hold: (1) that Steele's plea agreement is indivisible under *Ermels* and *Turley* and (2) that Steele

cannot claim that his stipulation to the factual and legal validity of an exceptional sentence is separable from the rest of his plea agreement. Because he does not challenge the validity of the entire plea agreement, his stipulation is effective and the court properly imposed an exceptional sentence.

¶20 Affirmed.

HOUGHTON and HUNT, JJ., concur.

Review denied at 159 Wn.2d 1007 (2007).