Rel: May 2, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# Alabama Court of Criminal Appeals

## OCTOBER TERM, 2024-2025

———————————————

## CR-2024-0056

———————————————

## T.A.A., Jr.

## v.

## State of Alabama

## Appeal from Coffee Circuit Court
## (CC-21-323)

On Return to Remand

WINDOM, Presiding Judge.

T.A.A., Jr. appeals his guilty-plea convictions for 5 counts of production of obscene matter containing a visual depiction of a person under 17 years of age involved in obscene acts, see § 13A-12-197, Ala. Code 1975, 6 counts of sexual abuse of a child less than 12 years of age,

see § 13A-6-69.1, Ala. Code 1975, 1 count of first-degree sodomy, see § 13A-6-63(a)(3), Ala. Code 1975, and 2 counts of a parent or guardian permitting children to engage in the production of obscene matter, see § 13A-12-196, Ala. Code 1975. Pursuant to a plea agreement, the Coffee Circuit Court sentenced T.A.A. to concurrent terms of 35 years in prison for his convictions for production of obscene matter, first-degree sodomy, and a parent or guardian permitting children to engage in the production of obscene matter and 20 years in prison for his convictions for sexual abuse of a child less than 12 years of age.

On original submission, although neither party raised the issue, this Court found that several of T.A.A.'s sentences were illegal. "Matters concerning unauthorized sentences are jurisdictional," Hunt v. State, 659 So. 2d 998, 999 (Ala. Crim. App. 1994); therefore, this Court may take notice of an illegal sentence at any time. See, e.g., McCall v. State, 794 So. 2d 1243 (Ala. Crim. App. 2000).

Section 13A-5-6(c), Ala. Code 1975, provides, in relevant part:

> "In addition to any penalties heretofore or hereafter provided by law, in all cases ... where an offender is convicted of a Class A felony sex offense involving a child as defined in Section 15-20A-4, [Ala. Code 1975,] and is sentenced to a county jail or the Alabama Department of Corrections, the sentencing judge shall impose an additional penalty of not

2

less than 10 years of post-release supervision to be served upon the defendant's release from incarceration."

The offenses of first-degree sodomy under § 13A-6-63(a)(3), production of obscene matter containing a visual depiction of a person under 17 years of age involved in obscene acts, and a parent or guardian permitting children to engage in the production of obscene matter are Class A felonies and "sex offense[s] involving a child" under §§ 15-20A-4(2) and 15-20A-4(27). Because T.A.A. was convicted of Class A felony sex offenses involving a child, he had to be sentenced according to § 13A-5-6(c). As this Court stated in Bishop v. State, 344 So. 3d 906, 913 (Ala. Crim. App. 2021):

> "The authorized sentencing range for a Class A felony sex offense involving a child is not less than 20 years, § 13A-5-6(a)(4), nor more than 99 years or life in prison, § 13A-5-6(a)(1), and not less than 10 years of post-release supervision, § 13A-5-6(c). The failure to impose a term of post-release supervision as required by § 13A-5-6(c) is similar to the failure to impose a term of probation as part of a split sentence under 15A-18-8, Ala. Code 1975, which renders a sentence illegal.
>
> "....
>
> "It is clear, based on the legislature's specific reference in § 15-20A-20(d)[, Ala. Code 1975,] to § 13A-5-6(c), that the post-release supervision referred to in 13A-5-6(c) is electronic monitoring as found in § 15-20A-20(d). However, the plain language of both § 13A-5-6(c) and § 15-20A-20(d) make it clear that the period of post-release supervision is part of the

3

offender's sentence and must be imposed by the trial court. In addition, the length of the post-release supervision period required by § 13A-5-6(c) is discretionary, i.e., not less than 10 years. See, e.g., Lane v. State, 66 So. 3d 824, 829-30 (Ala. 2010) (holding that where § 13A-5-9(b)(3), Ala. Code 1975, required a sentence of life or "any term not less than 99 years," a term in excess of 99 years was authorized). Thus, in sentencing a sex offender like Bishop, a trial court has discretion to determine the appropriate length of the post-release supervision period, as long as that period is not less than 10 years, just as it has discretion to determine the appropriate length of the prison term, as long as that term is within the authorized statutory range."

On August 2, 2024, this Court issued an order remanding the case for the circuit court to conduct a resentencing hearing to correct the illegality in T.A.A.'s sentences by imposing a term of not less than 10 years of post-release supervision as required by § 13A-5-6(c) for each Class A felony sex offense involving a child. This Court also stated that, if T.A.A. determined that his resentencing affects the voluntariness of his guilty plea and moves to withdraw his plea, the circuit court shall conduct a hearing to determine whether withdrawal of the plea is necessary to correct a manifest injustice. See Rule 14.4(e), Ala. R. Crim. P.

On remand, the circuit court, in accordance with this Court's instructions, added terms of 10 years of post-release supervision to T.A.A.'s sentences for his Class A felony convictions. T.A.A., in turn,

4

moved to withdraw his guilty plea. T.A.A. testified that his guilty plea had been involuntarily and unknowingly entered because he had been unaware of the additional penalty of post-release supervision. The circuit court found that the testimony was unpersuasive in light of T.A.A.'s background as a law-enforcement officer and his extensive training and instruction on Alabama law. The circuit court found "no merit in the defendant's claim that he would have rejected a plea offer had he known about the requirement to serve at least 10 years of post-release supervision." (C. on remand 26.)

In his brief on return to remand, T.A.A. reasserts his argument that his guilty plea was involuntarily and unknowingly entered because he was unaware of the additional penalty of post-release supervision and argues that the circuit court erred in denying his motion to withdraw his guilty plea. The State concedes the issue, at least with respect to T.A.A.'s Class A felony convictions.

The circuit court's failure to impose a period of post-release supervision as part of T.A.A.'s sentences for the Class A felony sex offenses involving a child rendered those sentences illegal. See Bishop, 344 So. 3d at 913. A trial court "cannot accept a plea agreement that

5

calls for an illegal sentence." Calloway v. State, 860 So. 2d 900, 906 (Ala. Crim. App. 2002). T.A.A. pleaded guilty pursuant to a negotiated plea agreement, and he was not informed of the additional penalty of post-release supervision. T.A.A.'s resentencing constituted a rejection of his negotiated plea agreement. Wells v. State, 381 So. 3d 508, 512 (Ala. Crim. App. 2022). Consequently, the circuit court, notwithstanding its findings regarding T.A.A.'s credibility, should have allowed T.A.A. to withdraw his guilty plea. See Wells, supra; see also Williams v. State, 203 So. 3d 888, 894 (Ala. Crim. App. 2015) ("When an illegal sentence is imposed in accordance with a plea agreement the [defendant] is entitled to withdraw his plea.").

Despite conceding that T.A.A. is entitled to relief with respect to his Class A felony convictions, the State argues that T.A.A.'s guilty plea to the Class B felonies – 6 counts of sexual abuse of a child less than 12 years of age – should remain in place. The State reasons that the sentences for the Class B felonies were not affected by his resentencing; thus, T.A.A. received the sentence for which he had negotiated, leaving him no ground to warrant the withdrawal of his guilty plea to those offenses.

6

Whether a trial court has the discretion to sever a guilty plea, allowing a defendant to withdraw only a portion of his plea, appears to be, as the State asserts, an issue of first impression in Alabama. The Supreme Court of Washington has considered this issue, and this Court finds its reasoning well-taken. See State v. Turley, 149 Wash. 2d 395, 69 P.3d 338 (2003).

In Turley, the defendant pleaded guilty pursuant to a plea agreement to charges of first-degree escape and conspiracy to manufacture methamphetamine. During the guilty-plea hearing, the State failed to inform the defendant that the drug charge required mandatory community placement, which in Washington is considered to be a direct consequence of a plea. The trial court sentenced the defendant in accordance with the plea agreement. When the State learned three years later that the drug charge carried a mandatory term of community placement, it moved the trial court to amend the defendant's sentence. The trial court amended the defendant's sentence over his objection.

The defendant then moved to withdraw his guilty plea, arguing that his guilty plea to the drug charge had not been knowing and voluntary because he had been unaware of the mandatory community placement

7

that had been added to his sentence. The defendant also argued that, because he had pleaded guilty pursuant to a single plea agreement, he should be allowed to withdraw both guilty pleas. The trial court granted the defendant's motion in part, allowing him to withdraw his guilty plea with respect to only the drug charge. The defendant appealed the decision, and the Washington Court of Appeals affirmed in an unpublished memorandum.

The Supreme Court of Washington granted the defendant's petition for review. The court addressed the question "whether a trial court may grant or deny a motion to withdraw a plea agreement as to each count separately when the defendant pleaded guilty to multiple counts entered the same day in one agreement." Turley, 149 Wash. 2d at 398, 69 P.3d at 340. The court "answer[ed] that question in the negative." Id. The court recognized that "[a] plea agreement is essentially a contract made between a defendant and the State," and, in accordance with principles of contract law, considered the "the intent of the parties" to determine whether a plea agreement should be considered severable. Turley, 149 Wash. 2d at 400, 69 P.3d at 341.

> "When determining intent, we do not concern ourselves with
> unexpressed subjective intent, only objective manifestations

8

of intent.  See, e.g., Wilson Court Ltd. P'ship v. Tony Maroni's, Inc., 134 Wash. 2d 692, 699, 952 P.2d 590 (1998).

> "…  Here, the record contains sufficient objective indications of intent from which we conclude the plea agreement was meant to be indivisible, without inquiry into the substance of the plea negotiations.  Turley negotiated and pleaded to two charges contemporaneously.  One document contained the plea to and conditions for both charges.  The trial court accepted his plea to both charges at one hearing.  In that hearing, the court advised Turley of the consequences of his plea, but did not separate these consequences out based on the individual charges.  We hold that a trial court must treat a plea agreement as indivisible when pleas to multiple counts or charges were made at the same time, described in one document, and accepted in a single proceeding.  Absent objective indications to the contrary in the agreement itself, we will not look behind the agreement to attempt to determine divisibility.  Such a determination, after the fact, would not serve the plea negotiation process.  When the defendant can show manifest injustice as to one count or charge in an indivisible agreement, the defendant may move to withdraw the plea agreement or have specific performance of the agreement."

Turley, 149 Wash. 2d at 400, 69 P.3d at 341-42.

The courts of this State have shown a reluctance to apply rigid principles of contract law to guilty pleas but have nonetheless recognized that they may provide a "useful analytical framework."  Ex parte Yarber, 437 So. 2d 1330, 1334 (Ala. 1983).  This Court agrees with the holding of Turley, finding its use of principles of contract law to determine the intent of the parties to produce a fair and workable standard.

Here, T.A.A. was charged with 14 offenses in a single indictment. (C. 328-33.) T.A.A. negotiated with the State for a single plea agreement that covered all 14 pending charges. (C. 454-55.) The circuit court accepted T.A.A.'s guilty pleas to the 14 charges in a single proceeding. Applying the reasoning of Turley to the facts of this case, we hold that it was the intent of the parties to enter into a single plea agreement that covered all of T.A.A.'s charges. Therefore, the circuit court cannot sever T.A.A.'s guilty plea. See id.; see also People v. Blanton, 317 Mich. App. 107, 897 N.W.2d 613 (2016) (adopting the rationale of Turley and holding that a defendant's guilty plea could not be severed), Whitaker v. State, 881 So. 2d 80, 82 (Fla. Dist. Ct. App. 2004) (holding that the trial court erred by granting only a partial withdrawal of the defendant's guilty plea because the record demonstrated that the parties had intended to negotiate the defendant's guilty plea to several charges as part of a package in exchange for the dismissal of other charges).

Therefore, this Court reverses the judgments of conviction against T.A.A. and remands the case to the circuit court with directions to set aside T.A.A.'s guilty plea and the resulting convictions and to restore T.A.A.'s case to the docket for appropriate disposition.

REVERSED AND REMANDED.

Kellum, Cole, Minor, and Anderson, JJ., concur.